2009, 1363. Is it Ms. Hebert? Hebert. Hebert, your honor. Thank you, your honor. May it please the court. Commerce's section 129 determination is based in part on a basic mathematical error. In calculating an average unit value for a subset of sales, Commerce erroneously transposed two figures in an equation, an error akin to dividing two by one instead of one by two. During the section 129 proceedings below, Thyssenkrupp brought that error to the agency's attention. Although Commerce initially responded that there was a reasonable basis to investigate the error further, and that its goal is to ensure that its calculations accurately reflect its methodological choices, the agency ultimately concluded that it had no authority whatsoever to correct its own mathematical error. Why didn't you challenge it under 1673D after the original determination? Well, your honor, whether we challenged it during the original investigation is really not relevant here, because Commerce's transposition error is indisputably an integral part of its section 129 determination, and it's that determination that Thyssenkrupp has challenged here. But you acknowledge that you had an earlier opportunity where it would have been appropriate to challenge it, correct? Well, during the original investigation, in time we notified Commerce that it had made a calculation error in its calculation of dollars done for the 84 sales, and we knew that Commerce had made a calculation error because the total sales value that it disclosed... But you didn't challenge it under 1673D, which would have been appropriate, and you could have done that. I'm not saying you had to, but you had the opportunity to challenge it then, correct? Well, we did notify Commerce that we did raise a calculation error with respect to the 84 sales during the original investigation. And again, we knew that Commerce had made an error because the total sales value that Commerce disclosed was more than twice the verified total sales value for the 84 sales. You mentioned it, but then Commerce closed the original determination, and it had been closed for nine years, and you didn't appeal. You could have, at that point, raised this as an important issue, and you could have independently appealed on this computational error nine years earlier, correct? Well, we did challenge the calculation error in an appeal. What was not immediately apparent at that time was the source of the error. Commerce's transposition error was not immediately apparent because while Commerce disclosed the figure that it calculated for the average unit value, it didn't disclose its calculations. So is that the reason you went on to settle rather than appeal that issue? Well, we stipulated to a dismissal, and if that was appropriate under the circumstances, in January of 2002, the final results of the first administrative review had come out, and Commerce had calculated a dumping margin of 0.66 percent. That was far lower than the 11.23 percent that Commerce calculated during the original investigation. So at that point, and that was the rate that would serve as the cash deposit rate going forward. So at that point, there was really no reason for ThyssenKrupp to continue to challenge the final determination in the investigation. It would have been a complete waste of everyone's time. But even though you knew that there was an error that was committed, and you did not put any time into the fact to find that particular error, even though that error might have been obvious at that point if you had done some due diligence on it. Well, Your Honor, again, whether or not ThyssenKrupp failed to exercise due diligence in the original investigation is not relevant. But why isn't it relevant? Because basically you accepted a finding which you know to be an error. Didn't you waive your rights at that point? Eight years later, you say, well, they made a mistake, now we've got a 129 proceeding. We want to go proceed through that particular aspect of it. Well, it's important to remember that the Section 129 determination is a new determination, and it applies on a prospective basis only. So it serves as the basis of an expert's anti-dumping liability, if any, going forward. So it is, in a very real sense, a new determination that carries new consequences. Isn't it a limited proceeding for the purpose of rendering the action not inconsistent with the findings of the panel of the appellate body? Well, there's certainly nothing in Section 129. In other words, it's not an appeal on all issues. Well, Your Honor, there's nothing in Section 129 that specifically precludes Congress from correcting other clerical errors. And even the CIT acknowledged that correcting the error arguably would have been consistent with the statutory language. Now, that determination, which we know is a new determination that's made clear by the SAA accompanying the URA, and it's confirmed by Section 129, which provides that it applies on a prospective basis, is subject to judicial review. The judicial review provisions significantly are found in the anti-dumping statute, not in the URAA, and they provide that a Section 129 determination is subject to judicial review. There's nothing in those provisions that suggests that that determination, that judicial review, is limited to that specific aspect of the determination that responds to an adverse WTO report. It's the entire determination that's subject to judicial review. But if 129 is ambiguous, if Section 129 is ambiguous, would you admit that it is ambiguous at this point? We don't think so, Your Honor. You think it's clear? We think that when you consider Section 129 in light of the SAA and the entire anti-dumping scheme, it's clear that Commerce is required to correct a mathematical error, an error that renders a determination plainly inaccurate in a determination. But at a minimum, Commerce concluded that it had no authority whatsoever to correct its mathematical error. Well, if in fact, excuse me for a second, if hypothetically Section 129 is in fact ambiguous, and Commerce's interpretation of 129 is reasonable, do we have to give it Chevron deference? Well, we don't think it's reasonable, and I'll explain it in just a moment. Hypothetically, if it's reasonable, must we give Commerce's interpretation of 129 Chevron deference? Well, we don't believe so because this court held in Borland that where the issue is the scope of an agency's legal authority, that Chevron deference is not appropriate. But again, Commerce's interpretation, even if you decide that the statute is ambiguous as to whether Commerce is obligated to correct its error, at a minimum, Commerce has the authority. As this court has long recognized, it is well established that agencies have inherent authority to correct their own inadvertent ministerial errors. Commerce itself recently took the position that it has inherent authority to correct clerical errors in its determinations, regardless of whether it possesses explicit statutory to do so. But it was a clerical error that was fairly obvious eight years before, because somehow or other, someone made a mistake in transposing numbers, and some due diligence could have been conducted at that point to find the clerical error, but it was not done. And eight years later, all of a sudden, the clerical error, which became obvious at that point in time, should have been obvious even eight years before. I don't quite understand why, at this point, Commerce would be required to correct an error, which the parties could have raised it much, much earlier. Well, again, Your Honor, that error is indisputably a part of Commerce's new Section 129 determination, which is simply to encrypt new anti-dumping margin 2.11%. You can't get to that number without the error. If the error is corrected, TISM corrupts dumping margin falls far below 2%. Now, respect to whether it was- Yes, but what about if there are other errors, as Allegheny alleged? Well, Allegheny said, well, wait a minute. You can't correct this error. This was a result of a settlement. There were lots of other errors, too, which would have gone the other way, but that's exactly why this settlement was reached, and you should leave it undisturbed. That's why Commerce isn't messing with it, because it wouldn't be a matter of just fixing these two transposed numbers, but a matter of going over, line by line, every aspect of the determination, which is quite extensive. Well, Your Honor, the only error that is properly before this Court is Commerce's transposition error, which is a mathematical error. Allegheny's errors, we submit, are all methodological in nature, and we're not sure that they've been preserved. TISM corrupt was the only party that filed a complaint in the CIT. Allegheny didn't file any sort of contingent or conditional cross-claims, so we don't believe that they're actually before this Court. But the error that is before this Court is a mathematical error, not a methodological error, and there are good reasons why clerical errors, but not necessarily methodological errors, should be corrected. A mathematical error in a determination renders that determination plainly inaccurate, such that the failure to correct the error would put a court in the position of knowingly affirming a determination with errors. The same is not necessarily true of a methodological error, which this Court has explained is an error in judgment, and therefore may be a close call. Put differently, whereas reasonable minds may differ as to the existence of a methodological error, the same can't be said of a mathematical error, which renders it plainly inaccurate. Reasonable minds can argue about whether a methodological error was made, but you can't reasonably argue that 2 plus 2 equals 5. And so the only error that the Court has to consider in this case is Congress's transposition error, which is a clear mathematical error. It's indisputably a part of Congress's Section 129 determination. That's a new determination. It applies on a perspective basis only, so it's in a very real sense a new determination. But if Congress limits its own interpretation of 129, limits it to correcting only the thing that is in potential contrast with WTO agreements, then that would be the zeroing. And the zeroing in this case is not where that computational error is made. It's made in other aspects of it. Well, so if Congress determines that under 129 we only have the authority when we reopen to focus on this little piece of the puzzle, we can't fix the edges, even if there are mathematical errors in them. How is that an unreasonable interpretation of 129? I realize it's unreasonable because anytime you look at a mathematical error that's plain on its face, and I don't imagine they're going to stand up and say there is no mathematical error, I imagine they're likely to acknowledge the mathematical error. But how is it unreasonable for them to say, yes, there's a mathematical error, but under our interpretation of 129 we don't reopen the entire calculation. We're only permitted to make adjustments in the area that's in contrast with WTO. And as such, even though, yeah, it's embarrassing that that error is there and we'd love to correct it, it's not within the scope of our authority as we interpret 129. Well, again, Your Honor, there's nothing in Section 129 that precludes Congress from correcting the error. Even the CIT acknowledged that. And again, agencies have inherent authority. So even putting the statute aside, even if the statute is ambiguous, agencies have inherent authority. This court itself has recognized that that is a well-established principle. They have inherent authority to correct their own inadvertent ministerial errors. And so Congress's decision here, which again would require this court to knowingly affirm a determination with errors, is just simply not reasonable. If the court has no questions, I would like to reserve the reign of my time. We will reserve it for you, Ms. Hebert. Ms. Burke. So is my last statement true? Do you acknowledge there's a mathematical error? The answer to that is that Commerce in its Section 129 determination and in its ministerial error memo did not determine the answer to that question one way or the other. Do I know whether there's a mathematical error? I've certainly discussed it with Commerce. The likelihood is, as you say, there probably is. But that is not an official determination that Commerce has made. That's an unofficial speculation based on Council approval. Until it's in triplicate and signed off by the Assistant Attorney General, you can't say 2 plus 2 equals 4? Well, that's correct, Your Honor. That's what I figured. This is Commerce's arena. And Commerce obviously has the authority and the expertise to make a determination as to whether there's an error. They specifically didn't determine whether there was an error. And they did that on purpose as a matter of principle. But if that error is obvious, if the error is 2 plus 2 equals 5 instead of 4, it's fairly obvious in its face. Why can't they just correct it? Even though it comes up in the 129 proceeding, which is limited by the WTO proceeding. Well, Commerce's position has never been that it doesn't possess the authority to correct an error. Commerce's position here, and this gets to the tension between finality and accuracy, Commerce's position here is that when you have a Section 129 determination that has a very limited purpose to impose a very limited calculation change, and that's based upon consultations among the political branches of the United States, when you have that determination and when you have a clerical error allegation that was made essentially in 1999 and upon which the plaintiff did not prevail. So essentially when you have a final and binding determination from the Department of Commerce that the Court of International Trade has ruled upon and the party has not appealed, in those circumstances it is not appropriate to go back and reopen a closed proceeding. This is a collateral attack on the original finding. By using 129 as a procedure rather than a direct appeal that they had available, they decided not to do a direct appeal back when the determination was first made, right? They decided not to do a direct appeal, that's correct. And there was an obvious error at that point, which could have been determined by either side if in fact there was due diligence that was conducted, but no one determined to proceed on that basis and it became final. Well, I'm not sure how obvious the error was. At that point? That's correct. ThyssenKrupp has maintained throughout the entirety of all these proceedings that there's something wrong with the number. Back in 1999, they alleged that a different thing was wrong with it. They lost that on the merits. They didn't even lose it as a matter of a clerical error allegation. It was raised before commerce as a clerical error allegation. Commerce said, no, this is a methodological choice. By the time it got to the CIT, as far as I can tell from the record, it was raised as a substantive question and the trade court addressed it as such and affirmed and sustained the Department of Commerce. Now, carrying it one step further, hypothetically, if Section 129 is in fact ambiguous and commerce makes the determination to resolve the ambiguity one way or the other, must we give commerce deference? Yes. Deference at that point? Yes, absolutely. And I think I thought I heard ThyssenKrupp's counsel concede that the statute is ambiguous. I think it was said a couple of times that there is nothing in the statute that precludes commerce from correcting an error. And I think that's the reverse, the other side of the coin from what we're saying, and what commerce said in its 129 determination, which is there is nothing in the statute that requires commerce to correct its error, which is all that this court and the Court of International Trade have ever said about commerce's ministerial error statute and regulation, which is that as long as parties don't comply with it, commerce is not required to consider allegations that are late, and in this case, very, very late. Well, counsel, so in my understanding, the government's position to be that in a future 129 action, the government would be free to correct clerical errors if it so chose, even if they are outside the scope. Like in this case, I would say the scope is zeroing. So say they're outside the scope of the zeroing determination, is the government's position that it has not taken a position vis-a-vis what it's entitled to do in 129, but rather only taken a position as to what it will do in this case, or is the government, because that to me seems less entitled to Chevron deference, because it doesn't seem like it's related to the interpretation of the statute, or is the government's position that under 129, its interpretation is it's only permitted to work on and correct the portion that relates to, in this case, zeroing? What is in contrast with the WTA? I think it's probably somewhere in between, and I'll explain what I mean by that. This is a relatively new issue, what happens when there is a section 129 determination, and then there's an allegation of clerical error. So commerce has addressed it in this case, and as the court can see from the section 129 determination, it addressed it in a previous case, which it heavily referenced. Commerce, in both determinations, is articulating its interpretation of the statute, absolutely. That said, the interpretation of the statute is that it will not correct errors, clerical or otherwise, that were not raised before the WTO, and are a matter of otherwise final and binding issues pursuant to domestic law. That's the articulation of commerce's interpretation of the statute. That said, commerce has interpreted the statute for purposes of, so far, two very different section 129 determinations. It's quite possible that, depending on the kind of determination, the answer could be different. So, for example, in the trade court's decision, the trade court referenced an older section 129 determination regarding tubular goods from Mexico, where commerce wasn't looking at such a narrow issue. Commerce was actually giving additional reasons or bases for an entire sunset determination. That's a very different kind of 129 determination, where essentially the whole issue has opened wide up. Who knows what would happen if it's not? But you're scanning a very thin ice at that point. If you want the court to give Chevron deference to commerce, commerce has to be consistent in its interpretation of 129. If you're saying that the Commerce Department can take a look and go beyond the aspects of the WTO reference, which has been pointed to as the zeroing factor, if, in fact, that's the limit of the provision, and that's the way commerce interprets it, it has to be consistent in its interpretation. That's absolutely true, and it has been consistent. Hopefully I wasn't being confusing. The example that I was giving earlier involved a section 129 determination, the scope of which was simply much larger than the scope that we have here. So it could potentially entail looking at other aspects of a previous determination, whereas here you have the political determination to implement a very narrow change, and that's based upon consultations that simply did not involve the issue of adverse facts available or any kind of clerical error allegations. So I still remain a little bit confused. Is commerce's interpretation that in 129 actions it cannot correct clerical errors outside of the disputed issue? That is not what commerce articulated in its section 129 determination. What commerce's position is is that it is not required to correct clerical errors, and that at this point it interprets the statute to mean, the section 129, to mean that the section 129 proceeding should be limited to the issues that were raised before the WTO. I don't think commerce could say... Those are two different things, though. So commerce interprets the 129 statute to say that its review should be limited to the issues before the WTO? Is that what I just understood you to say? That's partly what commerce said. I mean, commerce is interpreting the scope of its own proceeding. And as such, it has determined that in this instance, where there is a section 129 consultation upon a particular calculation change, that it is reasonable to limit its proceeding to only that calculation change and not anything else. Commerce is not saying that it lacks the authority ever to correct a clerical error, because obviously that would fly in the face of the court. I'm sorry. Suppose that we agree that the statute is ambiguous and that commerce is correct, that the statute 129 does not require it to correct clerical errors. What then is the standard of review we apply to the decision of commerce simply not to correct clerical error in this case? It's not Chevron deference, because we've already said we agree commerce doesn't have to under the statute. But what authority does commerce have to choose whether it's going to correct a mathematical error or not? Well, I think there's a couple answers. The first answer is that certainly the interpretation of the statute warrants Chevron deference. The question as to whether commerce has complied with its own regulation and abused its discretion under its own regulation is potentially a separate question. But obviously, this court has held in IPSCO that if a party waits 44 months and doesn't make a clerical error allegation, they're out of time. Then certainly if they wait nine years, they're out of time. So even if the standard is an abuse of discretion, I don't think the answer changes. But that doesn't answer Judge Moore's question as to whether or not there's consistency in the interpretation of the statute by commerce. Can't just pick and choose on each particular case the way it's going to interpret the statute and expect the court to give it Chevron deference. Well, commerce is not picking and choosing its interpretation of what the proper scope of a Section 129 proceeding is. All I was alluding to is that when commerce applies its own regulation regarding correction of clerical errors, the court has always treated that on a case-by-case basis. So I think I see two separate issues before the court. And would we have the authority at this point then to selectively determine what Section 129 means because it is ambiguous without giving any deference to the Commerce Department? Well, I'm hesitant to say the court doesn't have authority to do something. However, the statute, I think if the court gets to that, the assumption is that the statute is ambiguous. And if the statute is ambiguous, then the court owes deference to commerce's interpretation. Thank you, Ms. Burke. Thank you. Ms. Staley has three minutes for Allegheny. Thank you, Mayor. Please, the court. I'd like to address, if I could, three principal issues. And the first is the issue of the clerical error. And I would like to make the point that this is definitely not a question of whether 2 plus 2 equals 4. This issue of the clerical error is much more complicated than that because the issue is what is the average unit value that commerce would use in the calculation in its adverse facts available call. What ThyssenKrupp wants you to do is to force commerce to use a very low average unit value in the adverse inference call. Maybe I'm confused. I'm no mathematician, but switching the numerator and denominator seems pretty straightforward as far as errors go. Yes, Your Honor, but the result, though, is a value that comes out of that equation. And so what happened was that, yes, even if the Commerce Department acknowledged that there were this transposition, it's the result that is at issue because we would strongly contest, if commerce decided to transpose those two values and use that as the average unit value, that value was the value that was used to make the adverse inference call against ThyssenKrupp in calculating the margin that applied to ThyssenKrupp's failure to submit the data. So that has much more long-ranging implications than simply transposing two numbers. If they redo that calculation, the entire adverse inference calculation starts to unwind because that average unit value formed the very basis for the adverse inference call. And in fact, 10 years ago, when this matter was exactly before the... I mean, if it was done incorrectly based on a mathematical error, it should be unwound. Well, but then, Your Honor, it wouldn't just be a matter of changing two lines of programming. Then commerce would have to evaluate, was that the correct average unit value we should be using to make the adverse inference call about ThyssenKrupp? So my point here is that this isn't simply a matter of correcting the error and plugging it into the formula. Then you have to evaluate, is that what's being calculated as an average unit value for the missing sales that ThyssenKrupp failed to submit to the Commerce Department? Is that very underlying basis for the adverse inference call? So when commerce goes back, if it were to, to correct supposedly that transposition of the error to create a lower average unit value, it would then have to decide whether that average unit value was sufficiently adverse to account for the fact that ThyssenKrupp did not comply with its requirements at the time of that investigation. In fact, we raised this very problem during the original investigation. And believe me, now coming back 10 years later, I'm ready to fight because there were errors in that decision, as you know. This clerical error is not a simple mathematical clerical error. You may be ready to fight, but I think you better terminate your argument. Thank you, Your Honor. The only last point I'd like to make is that all the parties agreed to dismiss that appeal. ThyssenKrupp appealed their alleged error. We appealed our errors. We went to the court. We won our issue on a remand, but we all agreed to dismiss it. The principles of finality and judicial estoppel should preclude ThyssenKrupp from raising this again 10 years later in a matter that will become much more complicated if this has to be remanded for the correction of this error. We'll keep attorneys busy for the next 10 years. Yes, Your Honor. I hope I'm retired by then. Thank you. Ms. Hebert has a couple of minutes to comment. Thank you, Your Honor. I'd first like to point out that the earlier CIT action was dismissed without prejudice, so there's no question of our case here being precluded by race judicata. But more importantly, Congress's error is an integral part of its Section 129 determination. That is a new determination. It is the determination that applies prospectively. It's the determination that keeps the anti-dumping duty order here in place. The final determination in the original investigation is undisturbed. Where do you get that integral language from? I'm sorry? Where do you get that integral language from? Is that part of the statute? No, it's our language, Your Honor. The determination is what's subject to judicial review. The error is an integral part of that determination, so that determination we submit is subject to judicial review. Again, there's nothing in the judicial review provisions which limits judicial review to that aspect of the determination that specifically responds to the WTO report. Is there any legal support for that? Saying that if it's an integral part, it must be reviewed? Well, Your Honor, I think... We have to first accept that it's integral. Secondly, is there any legal support after we accept the fact that it might be integral, that the WTO's determination must be reviewed and expanded at that point? Well, again, Your Honor, our point is only that it's the determination. The determination, which in this case is simply to corrupt new dumping margin 2.11%. And that is what is subject to judicial review. And that error is an integral part. I don't think that can be disputed. You can't get to that number with the error. The correction of the number results in a dumping margin that's far lower than 2%. Commerce concluded that it had no authority whatsoever to correct that error. That's what it stated in the final results for the Section 129 determination. It said that the limited purpose of a Section 129 proceeding is to correct those errors that are the subject of a WTO report. So we urge this Court, at a minimum, to remand to allow Commerce to at least consider whether to correct its error here. Thank you. Thank you, Ms. Hebert. We'll take the case under advisement.